**Office of the Attorney General**
**State of Texas**


DAN MORALES
ATTORNEY GENERAL

September 21, 1992

Mr. Skip Meno
Commissioner
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. DM-165

Re: Whether a school district can require a corporate surety to be sufficiently solvent to issue bid, performance, or payment bonds without reinsurance, and related questions (RQ-98)

Dear Commissioner Meno:

You ask whether school districts in this state may require corporate sureties on bid bonds, payment bonds, and performance bonds to be sufficiently solvent under the Texas Insurance Code to issue these bonds without the necessity for reinsurance. If school districts may not require sufficient financial solvency without need for reinsurance, you ask whether school districts may require either (1) that a reinsurance company underwriting a bond be admitted and authorized to do business in Texas, or (2) that the reinsurer meet minimum financial standards set by the district. In light of recent changes in the laws governing the procurement and submission of bid bonds, payment bonds, and performance bonds on public improvement projects, we conclude that a school district may not establish minimum financial standards for reinsurance companies. However, because these laws require a reinsurance company underwriting any portion of a performance or payment bond which exceeds ten percent of a surety company's capital and surplus to be "duly authorized, accredited, or trusteed to do business in this state," a school district may reject any such bond which does not meet this requirement.

The answers to your questions are governed by article 5160, V.T.C.S., and section 7.19-1 of the Insurance Code. Both provisions were amended during the most recent session of the Texas Legislature. *See* Acts 1991, 72d Leg., ch. 242, §§ 11.28, 11.29, at 1067-68 (amending both); Acts 1991, 72d Leg., 2d C.S., ch. 12, § 5.01, at 319 (amending art. 7.19-1). Article 5160 requires any person or persons, firm, or corporation entering into a contract with a governmental entity, including a school district, for the construction, alteration, or repair of any public building or public work valued in excess of $25,000, to execute a performance bond and a payment bond in the amount of the contract. V.T.C.S. art. 5160, subd. A. The 1991

amendment to article 5160 requires each such bond to be executed by a corporate surety or sureties in accordance with section 1 of article 7.19-1 of the Insurance Code. Prior to the amendment, the statute provided only that such corporate sureties be "duly authorized to do business in this State."

Prior to its amendment in 1991, article 7.19-1 provided the following, in pertinent part:

> Whenever any bond ... is, by law or the charter, ordinances, rules and regulations of a municipality, board, body, organization, court, judge or public officer, required or permitted to be made, given, tendered or filed, and whenever the performance of any act, duty or obligation, or the refraining from any act, is required or permitted to be guaranteed, such bond ... may be executed by a surety company duly qualified to do business in this state; and *such execution by such company of such bond...shall be in all respects a full and complete compliance with every law, charter, rule or regulation that such bond ... shall be executed by one surety or by one or more sureties, or that such sureties shall be residents, or householders, or freeholders, or either, or both, or possess any other qualification* and all courts, judges heads of departments, boards, bodies, municipalities, and public officers of every character *shall accept and treat such bond ... when so executed by such company, as conforming to, and fully and completely complying with, every requirement of every such law, charter, ordinance, rule, or regulation.*

Ins. Code art. 7.19-1 (pre-1991 language) (emphasis added).

The courts uniformly held that this version of article 7.19-1 and its statutory predecessor allowed local officials no discretion to determine the financial solvency of surety companies. *See International Fidelity Ins. Co. v. Sheriff of Dallas County*, 476 S.W.2d 115, (Tex. Civ. App.--Beaumont 1972, writ ref'd n.r.e.); *Peeples v. Nagel*, 137 S.W.2d 1064 (Tex. Civ. App.--Galveston 1940, writ dism'd). The courts reasoned that local officials, no matter how sincere, were ill-equipped to perform this function and that these matters were for the determination of experts employed by the commissioner of insurance. *International Fidelity Insurance Co.* Consequently, if the bonds were in proper form and properly executed, approval by the local official was ministerial, absent some fact that would justify a refusal to

approve. *Lawyers Surety Corp. v. Rankin*, 500 S.W.2d 181 (Tex. Civ. App.--Houston [14th Dist.] 1973, writ ref'd n.r.e.). The courts were not unsympathetic to the dilemma of local governments, but conceded that any deficiencies in this system could only be addressed by the legislature. *International Fidelity Insurance Co.*

Your questions are prompted by the concerns expressed by some school districts that state law provides little control over the financial condition of companies that reinsure portions of the risk undertaken by surety companies executing performance and payment bonds under article 5160. It is suggested that state laws do not require reinsurers of surety companies to be licensed in Texas and do not prescribe minimum capital and surplus requirements for reinsurers. Consequently, there is great concern that reinsurers may be incapable of paying claims on surety bonds offered to school districts and that the school districts themselves will be required to pay any such losses.

The 1991 amendment of article 7.19-1 addresses several of these concerns. The amendment redesignated the above-quoted language as subsection (a), added a new subsection (b), and inserted the words "except as provided by Subsection (b) of this section" before the first italicized phrase above. Subsection (b) provides the following in pertinent part:

> (b)  If any bond ... is in an amount in excess of 10 percent of the surety company's capital and surplus, the municipality, board, body, organization, court, judge, or public officer may require, as a condition to accepting the bond ... written certification that the surety company has reinsured the portion of the risk that exceeds 10 percent of the surety company's capital and surplus with one or more reinsurers who are duly authorized, accredited, or trusteed[1] to do business in this state.

---

[1] When a Texas insurer reinsures a portion of the risk it is authorized by law to assume, it is referred to as a "ceding" insurer. *See* Ins. Code arts. 3.10, 5.75-1. An "accredited" reinsurer is one which submits to this state's jurisdiction and authority to examine its books and records, is either domiciled or entered through and licensed to transact insurance or reinsurance in at least one state, files annually with the State Board of Insurance a copy of its financial statement filed with the insurance department of its state of domicile, and maintains a surplus as regards policy holders in an amount not less than $20 million. Ins. Code arts. 3.10(b)(2); 5.75-1(b)(2). A "trusteed" reinsurer is one which maintains a trust fund as provided in the statute in an amount of not less than $20 million or $100 million (depending on the number of assuming insurers or underwriters) for the payment of the valid claims of its United States policy holders and ceding insurers, their assigns, and successors in interest. Ins. Code arts. 3.10(b)(3); 5.75-1(b)(3).

> For the purposes of this subsection, the amount reinsured by any reinsurer may not exceed 10 percent of the reinsurer's capital and surplus. The State Board of Insurance shall furnish, on request, the amount of the allowed capital and surplus as of the date of the last annual statutory financial statement for a surety company or reinsurer authorized and admitted to do business in this state.

Ins. Code art. 7.19-1(b) (footnote added).

The 1991 amendments to articles 5160 and 7.19-1 accomplish several things. First, they authorize local officials to obtain information from the Department of Insurance regarding the condition of the surety company's capital and surplus for purposes of determining whether to consider requiring the surety company to obtain reinsurance. Second, article 7.19-1 effectively authorizes political subdivisions to require that corporate sureties secure reinsurance for the portion of any risk that exceeds ten percent of the surety company's capital and surplus. Third, article 7.19-1 requires reinsurers to be "duly authorized, accredited, or trusteed to do business in this state."[2]

Although the recent changes in article 5160 and 7.19-1 delegate some control to local officials, the primary responsibility for monitoring the financial condition of surety companies furnishing bonds under article 5160 -- and now reinsurers underwriting such bonds -- remains with the Department of Insurance. In view of the department's continuing role in the process, particularly where reinsurers are concerned, we are reluctant to conclude that political subdivisions are delegated greater authority to regulate surety companies submitting bonds under article 5160 or their reinsurers. Furthermore, since the legislature has expressly conferred on some political subdivisions the authority to establish financial criteria for surety companies providing performance and payment bonds, see, e.g., Local Government Code section 271.025(e) (enacted in 1989, authorizing a county with a population of 2.2 million or more and certain special districts to impose such criteria), we do not interpret the 1991 amendments to article 5160 and article 7.19-1 as impliedly conferring such authority on other political subdivisions with regard to reinsurers.

---

[2]Although the 1991 legislation deleted from article 5160 the requirement that a corporate surety be duly authorized to do business in Texas, subsection (a) of article 7.19-1 retains this qualification.

Accordingly, your first question -- whether a school district may require corporate sureties to be sufficiently solvent to issue bonds without reinsurance -- may be answered in the negative. Your second question -- whether school districts may require reinsurance companies to be admitted and authorized to do business in Texas -- is resolved by subsection (b) of article 7.19-1. School districts may reject surety bonds, any portion of which exceeds ten percent of the surety company's capital and surplus, that are underwritten by reinsurers that are not duly authorized, accredited, or trusteed to do business in this state. Your final inquiry -- whether school districts may establish minimum financial requirements for reinsurers -- is answered in the negative.

## S U M M A R Y

Surety companies furnishing bid bonds, performance bonds, and payment bonds under article 5160, V.T.C.S., must be duly authorized to do business in Texas. Ins. Code art. 7.19-1(a). School districts may require corporate sureties to obtain reinsurance for any portion of the risk that exceeds ten percent of the surety's capital and surplus. Reinsurers of such bonds must be "duly authorized, accredited, or trusteed" to do business in Texas. *Id.* art. 7.19-1(b). A school district may reject a surety bond which does not meet these requirements. School districts may not forbid surety companies from obtaining reinsurance in accordance with article 7.19-1, or establish minimum financial standards for reinsurers underwriting such bonds beyond those permitted by article 7.19-1.

Very truly yours,

DAN MORALES
Attorney General of Texas

**WILL PRYOR**
First Assistant Attorney General

**MARY KELLER**
Deputy Assistant Attorney General

**RENEA HICKS**
Special Assistant Attorney General

**MADELEINE B. JOHNSON**
Chair, Opinion Committee

**Prepared by Steve Aragón**
Assistant Attorney General